**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| EDWARD S. TALBERT, | : | |
| | : | Civil Action No. 07-4101 (PGS) |
| Petitioner, | : | |
| | : | |
| v. | : | **O P I N I O N** |
| | : | |
| BERNARD J. GOODWIN, et al., | : | |
| | : | |
| Respondents. | : | |

**APPEARANCES:**

Edward S. Talbert, Petitioner <u>pro se</u>
Special Treatment Unit
P.O. Box 699, 30-35 Hackensack Avenue
Kearny, New Jersey 07032

David L. DaCosta, Esq.
OFFICE OF THE NJ ATTORNEY GENERAL
25 Market Street, P.O. Box 112
Trenton, New Jersey 08625
Counsel for Respondents

**SHERIDAN**, District Judge

Petitioner Edward S. Talbert, a civilly committed person, pursuant to the Sexually Violent Predator Act ("SVPA"), <u>N.J.S.A.</u> 30:4-27.24, <u>et seq.</u>, currently confined at the Special Treatment Unit ("STU") in Kearny, New Jersey, has submitted a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. The named respondents are the Administrator of the STU, Bernard J. Goodwin, and the Adult Diagnostic and Treatment Center, Special Treatment Unit.

For the reasons stated herein, the petition will be denied for lack of substantive merit and because petitioner fails to raise a colorable federal claim.

**BACKGROUND**

**A.   Factual History**

The facts of this case were recounted below and this Court, affording the state court's factual determinations the appropriate deference, see 28 U.S.C. § 2254(e)(1), will simply reproduce the Appellate Division's factual recitation, as set forth in the Appellate Division published opinion on petitioner's first appeal, which resulted in a remand:

> The crimes that led to E.S.T.'s [Talbert] present commitment all took place in the summer of 1985. On May 26, 1985, [Talbert], who was then twenty-three years old, entered a home and, at knife point, raped a young woman after first forcing her to perform oral sex on him. On July 25, 1985, [Talbert] entered another home and, again at knife point, forced a young woman to perform an oral sex act on him. On July 28, 1985, once again armed with a knife, he entered a home and sexually groped a woman, but fled before performing any further sexual act as a result of her screams and fighting.
>
> When subsequently questioned by the police, [Talbert] admitted his involvement in each of these crimes, as well as his participation in robberies on July 18 and July 27, 1985. On July 29, 1986, pursuant to a negotiated agreement, [Talbert] pled guilty to sexual assault and attempted sexual assault charges arising from the May 26 and July 28, 1985 incidents, and to second-degree robbery stemming frm the July 27, 1985 incident. The plea agreement called for various consecutive and concurrent sentences aggregating thirty years with fifteen years of parole ineligibility.

See I/M/O Commitment of E.S.T., 371 N.J. Super. 562, 564 (App.
Div. 2004), reprinted in Respondents' Answer, p. 4.

**B.   Procedural History**[1]

On June 5, 2002, the Attorney General of New Jersey filed a
petition for the civil commitment of the petitioner under the New
Jersey Sexually Violent Predator Act ("SVPA"), N.J.S.A. 30:4-
24.24, et seq.  The petition was supported by the clinical
certificates of two physicians who asserted that the petitioner
falls within the SVPA.  On June 12, 2002, a temporary commitment
order was entered.  (RE J, Appellant's Brief on Appeal from final
civil commitment order, Procedural History).  A review or final
hearing was conducted in September 2002, before the Honorable
Serena Perretti, J.S.C.  Judge Perretti concluded that the
petitioner was a sexually violent predator ("SVP"), and issued a
judgment of commitment.  Petitioner appealed, and the Superior
Court of New Jersey, Appellate Division ("Appellate Division"),
in a published opinion, found that the testimony of the State's
experts relied to an unacceptable extent on hearsay and opinions
rendered by other experts.  See I/M/O Commitment of E.S.T., 371
N.J. Super. 562 (App. Div. 2004).  The commitment process was
found to be "fundamentally unfair," and the trial court's
decision was remanded for a new commitment hearing.

_____

[1]  The procedural history is taken from the exhibits
provided to this Court by the respondents and will be designated
herein as Respondents' Exhibit ("RE").

On February 4, 7, 22, and 28, 2005, Judge Perretti held another hearing.  After hearing testimony from four state experts and two defense experts, Judge Perretti found by clear and convincing evidence that Petitioner was a sexually violent predator.

Petitioner filed a Notice of Appeal from the judgment of commitment and in an unpublished opinion decided on April 2, 2007, the Appellate Division affirmed the judgment of commitment. (RE A).  Petitioner filed a petition for certification before the New Jersey Supreme Court, which was denied by Order filed July 16, 2007.  (RE F).

On or about August 27, 2007, the petitioner filed this federal habeas petition, under 28 U.S.C. § 2254.  The State responded to the petition on December 20, 2007, providing a copy of the relevant state court record.  Petitioner filed his objections or traverse to the State's answer on or about March 3, 2008.

C.   **Petitioner's Claims**

Petitioner raises the following claims for habeas relief in his petition:

1.   Petitioner's involuntary commitment under the SVPA violates the ex post facto clauses of the United States and New Jersey constitutions.

2.   Petitioner's involuntary commitment under the SVPA violates the Equal Protection and Due Process clauses of the United States and New Jersey constitutions.

4

3.   The Court erred in relying on hearsay contained in exhibits and the testimony of expert witnesses to make findings of fact and in reaching its decision to involuntarily commit petitioner.

4.   The State failed to prove by clear and convincing evidence that petitioner is a danger to himself or others and needs to be involuntarily committed under the SVPA.

(Petition, ¶¶ 10-13).

**DISCUSSION**

A.   **Standard of Review**

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).  Because petitioner is a pro se litigant, the Court will accord his petition the liberal construction intended for pro se petitioners.

Under § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal courts in habeas matters must give considerable deference to determinations of the state trial and appellate courts.  See 28 U.S.C. § 2254(e); Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied, 534 U.S. 919 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir.

1996)(<u>citing</u> <u>Parke v. Raley</u>, 506 U.S. 20, 36 (1992)).  Section

2254(d) sets the standard for granting or denying a habeas writ:

> (d)  An application for a writ of habeas corpus on
> behalf of a person in custody pursuant to the judgment
> of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim -
>
>> (1)  resulted in a decision that was contrary to, or
>> involved an unreasonable application of, clearly
>> established Federal law, as determined by the
>> Supreme Court of the United States; or
>> (2)  resulted in a decision that was based on an
>> unreasonable determination of the facts in light
>> of the evidence presented in the State court
>> proceeding.

28 U.S.C. § 2254(d).

In <u>Williams v. Taylor</u>, 529 U.S. 362 (2000), the Supreme

Court explained that subsection (d)(1) involves two clauses or

conditions, one of which must be satisfied before a writ may

issue.  The first clause, or condition, is referred to as the

"contrary to" clause.  The second condition is the "unreasonable

application" clause.  <u>See</u> <u>Williams</u>, 529 U.S. at 412-13.  In the

"contrary to" clause, "a federal court may grant the writ if the

state arrives at a conclusion opposite to that reached by [the

Supreme] Court on a question of law or if the state court decides

a case differently than [the Supreme] Court has on a set of

materially indistinguishable facts."  <u>Id.</u>  Under the

"unreasonable application" clause, a federal court may grant the

writ if "the state court identifies the correct governing legal

principle from [the Supreme] Court's decisions but unreasonably

6

applies that principle to the facts of [the petitioner's] case." Id. at 413.   Habeas relief may not be granted under the "unreasonable application" condition unless a state court's application of clearly established federal law was objectively unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief.   See id. at 411; see also Werts, 228 F.3d at 197; Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 891 (3d Cir. 1999), cert. denied sub nom, Matteo v. Brennan, 528 U.S. 824 (1999).

Consonant with Williams, the Court of Appeals for the Third Circuit has held that § 2254(d)(1) requires a federal habeas court to make a two step inquiry of the petitioner's claims. First, the court must examine the claims under the "contrary to" provision, identify the applicable Supreme Court precedent and determine whether it resolves petitioner's claims.   See Werts, 228 F.3d at 196-97; Matteo, 171 F.3d at 888-891.   If the federal court determines that the state court's decision was not "contrary to" applicable Supreme Court precedent, then the court takes the second step of the analysis under § 2254(d)(1), which is whether the state court unreasonably applied the Supreme Court precedent in reaching its decision.   See Werts, 228 F.3d at 197.

This second step requires more than a disagreement with the state court's ruling because the Supreme Court would have reached a different result.   See id.   AEDPA prohibits such de novo

7

review.  Rather, the federal habeas court must determine whether
the state court's application of the Supreme Court precedent was
objectively unreasonable.  See id.  In short, the federal court
must decide whether the state court's application of federal law,
when evaluated objectively and on the merits, resulted in an
outcome that cannot reasonably be justified under existing
Supreme Court precedent.  See id.; see also Jacobs v. Horn, 395
F.3d 92, 100 (3d Cir. 2005).

Even a summary adjudication by the state court on the merits
of a claim is entitled to § 2254(d) deference.  See Chadwick v.
Janecka, 312 F.3d 597, 605-06 (3d Cir. 2002), cert. denied, 538
U.S. 1000 (2003)(citing Weeks v. Angelone, 528 U.S. 225, 237
(2000)).  With respect to claims presented to, but unadjudicated
by, the state courts, however, a federal court may exercise pre-
AEDPA independent judgment.  See Hameen v. State of Delaware, 212
F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001);
Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000).  See
also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002)
(Moore, J., concurring) (and cases discussed therein).

Finally, federal courts are required to apply a "presumption
of correctness to factual determinations made by the state
court."  Id.; see also 28 U.S.C. § 2254(e)(1).  The Court of
Appeals for the Third Circuit has ruled that this presumption of
correctness based upon state court factual findings can only be

overcome by clear and convincing evidence.  See <u>Duncan</u>, 256 F.3d at 196 (<u>citing</u> 28 U.S.C. § 2254(e)(1)).  Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." <u>Mastracchio v. Vose</u>, 274 F.3d 590, 597-98 (1st Cir. 2001).

B.    **The New Jersey Sexually Violent Predator Act**

The New Jersey SVPA, <u>N.J.S.A.</u> 30:4-27.24 <u>et</u> <u>seq.</u>, provides for the custody, care and treatment of involuntarily committed persons who are deemed to be sexually violent predators ("SVP"). See <u>N.J.S.A.</u> 30:4-27.26.  The New Jersey Department of Corrections ("DOC") operates the facilities designated for SVPs, <u>N.J.S.A.</u> 30:4-27.34(a); and the New Jersey Department of Human Services ("DHS") provides for their treatment.  See <u>N.J.S.A.</u> 30:4-27.34(b).  The SVPA was amended in 2003 to require that regulations be promulgated jointly by the DOC and the DHS, in consultation with the Attorney General, taking "into consideration the rights of the patients as set forth in section ten of P.L. 1965, c. 59 (C. 30:4-24.2) ... [to] specifically address the differing needs and specific characteristics of, and treatment protocols related to, sexually violent predators." <u>N.J.S.A.</u> 30:4-27.34(d).

In passing the SVPA, the New Jersey Legislature made specific findings regarding SVPs.  See <u>N.J.S.A.</u> 30:4-27.25.  The Legislature noted that it was necessary to modify the previous

9

civil commitment framework and additionally separate SVPs from other persons who have been civilly committed.  See id.  The SVPA defines a SVP as:

> ... a person who has been convicted, adjudicated delinquent or found not guilty by reason of insanity for commission of a sexually violent offense, or has been charged with a sexually violent offense but found to be incompetent to stand trial, and suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment.

N.J.S.A. 30:4-27.26(b).

When it appears that a person may meet the criteria of a SVP, the "agency with jurisdiction"[2] must provide notice to the New Jersey Attorney General ninety (90) days, or as soon as practicable, before the anticipated release of a person who has been convicted of a sexually violent offense.  See N.J.S.A. 30:4-27.27(a)(1).  If the Attorney General determines that public safety warrants the involuntary civil commitment of a SVP, the Attorney General may initiate a court proceeding by presenting to a judge for immediate review the certification of two doctors, one of whom must be a psychiatrist, who have examined the person no more than three days before the petition for commitment. See N.J.S.A. 30:4-27.28; 30:4-27.26; see also In the Matter of Commitments of M.G. and D.C., 331 N.J. Super. 365, 373 (App. Div.

---

[2] An "agency with jurisdiction" refers to the agency which releases a person who is serving a sentence or a term of confinement.  This term includes the NJDOC.  See N.J.S.A. 30:4-27.26.

2000).  Once these documents are received by the court, the court must determine whether there is probable cause to believe that the person is a SVP.  See N.J.S.A. 30:4-27.28(f).  If the court so finds, the court will issue an order authorizing temporary commitment to a secure facility designated for the care, control and treatment of SVPs pending a final hearing, and a final hearing date will be scheduled within twenty (20) days of the temporary commitment.  See N.J.S.A. 30:4-27.28(f) and 30:4-27.29(a).  The SVPA mandates that the person deemed to be a SVP shall not be released from confinement before the final hearing. See N.J.S.A. 30:4-27.28(f).

The person deemed to be a SVP and his/her counsel shall be provided with the following at least ten (10) days before the final hearing: (1) copies of the clinical certificates and supporting documents, (2) the temporary court order, and (3) a statement of the SVP's rights at the final hearing.[3] See N.J.S.A. 30:4-27.30(a).

At the final hearing, the court must find by clear and convincing evidence that the SVP is in need of continued

---

[3]  A SVP is afforded the following rights at his/her court hearing: (1) the right to be represented by counsel or, if indigent, by appointed counsel; (2) the right to be present at the court hearing unless the court determines that because of the person's conduct at the court hearing the proceeding cannot reasonably continue while the person is present; (3) the right to present evidence; (4) the right to cross-examine witnesses; and (5) the right to a hearing in camera.  See N.J.S.A. 30:4-27.31.

involuntary commitment to issue an order of involuntary commitment.  See N.J.S.A. 30:4-27.32(a).  The SVP is not permitted to appear at the hearing without counsel, and he will be appointed counsel if indigent.  See N.J.S.A. 30:4-27.29(c). The psychiatrist on the SVP's treatment team who has conducted a personal examination of the SVP within five (5) days of the final hearing, shall testify at the hearing as to the clinical basis for involuntary commitment as a SVP.  See N.J.S.A. 30:4-27.30(b). Other members of the person's treatment team and other witnesses with relevant information, offered by the SVP or by the Attorney General, are permitted to testify at the final hearing.  See id.

Those persons committed under the SVPA shall receive annual review hearings.  See N.J.S.A. 30:4-27.35.  A SVP may be released from involuntary civil commitment upon recommendation of the DHS or by the SVP's own petition for discharge.  See N.J.S.A. 30:4-27.36.

**C.    Constitutional Claims (Grounds 1 and 2).**

1.    Ex Post Facto argument

Petitioner argues that his custody under the SVPA violates the ex post facto clause of the constitution.  He argues that his commitment is additional punishment imposed on him.  Citing the dissent in Kansas v. Hendricks, 521 U.S. 346 (1997), petitioner argues:

    . . . in petitioner's case, the SVPA matches exactly
    the key area of the Kansas statute the Supreme Court

12

was concerned about. First, New Jersey delayed
providing sex offender treatment to petitioner for
seventeen (17) years, until just before his release
date. Second, New Jersey failed to consider less
restrictive alternatives to petitioner's confinement
because the Department of Human Services never provided
the trial court a less restrictive alternative, as
provided in N.J.S.A. 30:4-27.32(c). Thus, petitioner
was left to the whims of the state regarding less
restrictive alternatives.   . . .   Finally,
petitioner's underlying crimes supporting confinement
occurred in 1986, years before the SVPA was enacted.
Therefore, the SVPA as applied to petitioner, matches
all three Kansas markers and is punishment.

2.   Due Process/Equal Protection arguments

Petitioner also argues in Ground 2 of his petition that his

continued confinement is the result of unequal treatment and

violates the constitution. He argues that the commitment, and

subjection to mandatory behavior modification as treatment for

mental illness, constitutes deprivation of liberty that requires

procedural protection under the due process clause. Petitioner

argues:

Because petitioner's liberty interests are at
stake, this Court should subject the SVPA to a strict
scrutiny standard. Sexual offenders in New Jersey are
subject equally to mandatory pre-sentence evaluations,
in accordance with N.J.S.A. 2C:47-1, et seq. Such
sexual offenders are both punished for their crimes and
concurrently treated for their condition. For no
procedural reason, petitioner was never sent for an
A[dult] D[iagnostic and] T[reatment] C[enter]
evaluation, but instead was sentenced the same day as
his plea, therefore petitioner was sentenced to state
prison and for seventeen (17) years the state had no
interest in his risk to control assumed sexually re-
offending behavior. Rather it sought to punish him.
Only after he had served his punishment did the state
then impose the additional burden of treatment under
the SVPA on petitioner. This burden, however, is not

13

rationally related to the goal of treating petitioner,
so that he may learn to control his risk for sexually
re-offending.  By engaging in questionable treatment
methodology seventeen (17) years too late, the state
has imposed an impossible burden on petitioner such
that he will spend the remainder of his life in the
special treatment unit.  The SVPA violates petitioner's
substantive due process rights under the United States
and New Jersey constitution.

(Petition, ¶ 11).

   3.  <u>Appellate Division</u>

The Appellate Division examined these claims on direct

appeal.  Devoting ten pages of its opinion to examining the

record on these claims, the Appellate Division found that

petitioner's "ex post facto and related due process arguments

must be rejected."  The Appellate Division continued:

. . . In order to prevail on such a claim, there would
have to be persuasive evidence from qualified mental
health professionals that an extended period of time in
prison without sex offender specific therapy would
prevent later treatment at the STU, pursuant to an SVPA
commitment, from being effective.  It is the futility
of such SVPA treatment that would render the
confinement punitive rather than therapeutic.

Clearly, [Talbert] offered no such testimony.  Indeed,
his case is particularly inapt for such a contention
because he does not even admit to the need for sex
offender treatment.  He is certainly entitled to
persist in his beliefs, but he must accept the
consequences of that position.  We need not resolve
whether generalized treatment programs, such as anger
management, substance abuse, and behavior modification,
would be sufficient treatment for a state-prison-
confined sex offender.  Here, [Talbert] did not even
avail himself of all available programs and
consequently is not in a position to argue that he
should have been offered more, which as the record
demonstrates, he would have rejected in any event.

        Accordingly, we reject [Talbert's] constitutional
        arguments.

(RE A at pp. 14-25).

        4.   Ex Post Facto Analysis

        The Ex Post Facto Clause prohibits the retroactive
application of a law that "inflicts a greater punishment, than
the law annexed to the crime, when committed." Calder v. Bull, 3
U.S. (3 Dall.) 386, 390 (1798).  Consequently, the Ex Post Facto
Clause cannot be violated without the imposition of punishment,
similar to the Double Jeopardy Clause.

        Because "punishment" is generally presumed to have the same
meaning for purposes of both constitutional provisions, the
threshold issue for this Court for purposes of evaluating both
claims is whether the challenged measure, here, the New Jersey
SVPA, constitutes punishment. See Kansas v. Hendricks, 521 U.S.
346 (1997)(applying single "punishment" analysis for both
clauses); see also E.B. v. Verniero, 119 F.3d 1077, 1092 (3d Cir.
1997).

        In Kansas v. Hendricks, the Supreme Court held that the
double jeopardy and ex post facto clauses of the United States
Constitution apply only to criminal statutes where punishment is
imposed.  See 521 U.S. at 361.  The Supreme Court stated:

        We must initially ascertain whether the legislature
        meant the statute to establish "civil" proceedings . .
        . . [W]e will reject the legislature's manifest intent
        only where a party challenging the statute provides
        "the clearest proof" that "the statutory scheme [is] so

                              15

> punitive either in purpose or effect as to negate [the
> State's] intention" to deem it "civil."

Id.  Thus, constitutional prohibitions against retroactive
punishment can only apply to criminal legislation.  See id.;
Seling v. Young, 531 U.S. 250 (2001)(holding that a state's
legislative and judicial determination that its sexually violent
predator statute was civil rather than criminal precluded double
jeopardy and ex post facto challenges by petitioners committed
under said statute).

Here, the New Jersey SVPA is essentially the same as the
Kansas and Washington statutes that were examined and upheld by
the United States Supreme Court in Hendricks and Seling,
respectively.  Like those state statutes, the New Jersey SVPA
does not establish criminal proceedings.[4]  Therefore, based on

---

[4] Further, New Jersey has formally determined that the SVPA
is a civil enactment, satisfying the requirements of Hendricks
and Seling.  See N.J.S.A. 30:4-27.24 (New Jersey Assembly
Appropriations Committee Statement stating that the SVPA
"establishes a civil procedure for the involuntary commitment of
sexually violent predators").

The New Jersey Supreme Court likewise determined that the
New Jersey SVPA is clearly civil and non-punitive.  See In re
Commitment of W.Z., 173 N.J. 109, 119-21 (2002).  In W.Z., the
New Jersey Supreme Court found that the SVPA was enacted by the
New Jersey State Legislature to protect the citizens of New
Jersey and provide treatment for those suffering from mental
abnormalities, which may cause them to commit additional acts of
sexual violence [N.J.S.A. 30:4-27.25(a)] and "in recognition of
the need for commitment of those sexually violent predators who
pose a danger to others should they be returned to society,"
[N.J.S.A. 30:4-27.25(c)].  See W.Z., supra.  The New Jersey
Supreme Court also noted that the SVPA requires the State to
provide housing, separate from the prison population, treatment,

the Supreme Court's ruling in <u>Kansas v. Hendricks</u>, the New Jersey SVPA is a civil statute, on its face.  These findings preclude the application of a double jeopardy or <u>ex</u> <u>post</u> <u>facto</u> challenge.

Accordingly, petitioner's <u>ex</u> <u>post</u> <u>facto</u> challenge to the SVPA as punitive will be denied.  Petitioner's reliance on the dissent in <u>Kansas</u> does not meet the requirement to afford habeas relief; the petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the state court determinations have "resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States."  Nor has petitioner demonstrated that the state court rulings "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

5.   <u>Due Process/Equal Protection Analysis</u>

Petitioner cites <u>Vitek v. Jones</u>, 445 U.S. 480 (1980), for the proposition that his due process rights have been violated.

The Supreme Court has recognized that commitment to a mental hospital produces "a massive curtailment of liberty," <u>Humphrey v. Cady</u>, 405 U.S. 504, 509 (1972), that "requires due process

---

and regular review hearings under <u>N.J.S.A.</u> 30:4-27.34.  <u>See</u> <u>W.Z.</u>, <u>supra</u>.  Further, "[t]he SVPA is virtually identical to the language of the Kansas SVPA challenged [and upheld] in <u>Hendricks</u>, and follows the pattern for such legislation that has been enacted by numerous other states." <u>W.Z.</u>, <u>supra</u>, 173 N.J. at 121.

17

protection," <u>Addington v. Texas</u>, 441 U.S. 418, 425 (1979);
<u>O'Connor v. Donaldson</u>, 422 U.S. 563, 580 (1975) (Burger, C.J.,
concurring).

"'Due process,' unlike some legal rules, is not a technical
conception with a fixed content unrelated to time, place, and
circumstances." <u>Cafeteria Workers v. McElroy</u>, 367 U.S. 886, 895
(1961). "Due process is flexible and calls for such procedural
protections as the particular situation demands." <u>Morrissey v.
Brewer</u>, 408 U.S. 471, 481 (1972).

> [I]dentification of the specific dictates of due
> process generally requires consideration of three
> distinct factors: First, the private interest that will
> be affected by the official action; second, the risk of
> an erroneous deprivation of such interest through the
> procedures used, and the probable value, if any, of
> additional or substitute procedural safeguards; and
> finally, the Government's interest, including the
> function involved and the fiscal and administrative
> burdens that the additional or substitute procedural
> requirement would entail.

<u>Matthews v. Eldridge</u>, 424 U.S. 319, 334 (1976).

Weighing the requirements of due process in the transfer of
a prisoner from prison to a state mental hospital for treatment,
the Court held that a prisoner facing such transfer is entitled
to: (1) written notice; (2) a hearing at which the evidence being
relied upon for the commitment is disclosed to the prisoner;
(3) an opportunity at the hearing for the prisoner to be heard in
person, to present testimony and documentary evidence, and to
cross-examine witnesses called by the State, except upon a

18

finding, not arbitrarily made, of good cause for not permitting
such presentation, confrontation, or cross-examination; (4) an
independent decision-maker; (5) reasoned findings of fact;
(6) qualified and independent assistance to indigent prisoners
facing transfer to a mental health facility; and (7) effective
and timely notice of these rights.  See Vitek v. Jones, 445 U.S.
480, 494-97 (plurality opinion) and 497-500 (Powell, J.,
concurring) (1980).  In addition, the state must establish
grounds for civil commitment by "clear and convincing" evidence.
See Addington, 441 U.S. at 433.

In this case, Petitioner has been afforded notice of the
intent to commit, a copy of the petition, counsel, and the
opportunity to challenge the commitment, which he did.  Thus,
petitioner has not shown that habeas relief is warranted.

Petitioner's equal protection arguments also fail.
Petitioner claims that involuntary civil commitment under the
SVPA violates his right to equal protection.  The Supreme Court
stated that "[t]he Equal Protection Clause of the Fourteenth
Amendment provides that no State shall 'deny to any person within
its jurisdiction the equal protection of the laws,' which is
essentially a direction that all persons similarly situated
should be treated alike."  City of Cleburne v. Cleburne Living
Ctr., 473 U.S. 432, 439 (1985); see also Artway v. Attorney Gen.,
81 F.3d 1235, 1267 (3d Cir. 1996).  As stated previously, under

19

the SVPA, a person is involuntarily committed when there is evidence of a prior conviction of a sexually violent offense and a likelihood to engage in acts of sexual violence in the future. See N.J.S.A. § 30:4-27.26. In the current case, Petitioner satisfied this requirement and he fits under the category of cases for which involuntary commitment is sought. Therefore, Petitioner's commitment under the SVPA does not violate his right to equal protection.

As such, the petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the state court determinations have "resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." Nor has petitioner demonstrated that the state court rulings "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." These grounds for habeas relief will be denied.

**E.** **Evidential Claims (Grounds 3 and 4).**

In Grounds Three and Four of his petition, Petitioner contends that the court relied improperly on hearsay evidence in reaching its decision to commit. Petitioner notes that the state offered 27 hearsay documents into evidence. Petitioner argues that his ability to prepare a defense was significantly undermined when years old information was used against him at the

20

hearing.  Also, Petitioner argues that the judge failed to perform any independent searching inquiry of the hearsay evidence.

In Ground 4 of his petition, the petitioner argues that the State failed to prove, by clear and convincing evidence, that petitioner is a danger to himself or others, and needs to be committed under the SVPA.  Specifically, the petitioner argues that the burden of proof was shifted to petitioner when the state argued that since petitioner was being offered treatment, he should "prove [himself] to the court, prove [himself] to the Appellate Division [that he] do[esn't] belong here, and in those two years he does absolutely nothing."

These claims were raised on direct appeal.  The Appellate Division rejected petitioner's arguments.  With respect to the hearsay argument, the Appellate Division explained:

> [Talbert] once again challenges the use of hearsay in the commitment hearing on remand.  This time, we disagree.  Our review of the record persuades us that the fundamental deficiencies that undermined the integrity of the first hearing were not present on remand.

> Dr. Zeiguer made it clear that while he had read the reports of experts who had previously evaluated [Talbert], he did so "mainly to find out if these experts [had observed] directly [Talbert's] behaviour, including very bad behaviours and statements that [he] would have made."  With respect to opinions and diagnoses contained in those prior reports, while he considered "the reasoning behind their opinion," he did "not rely on their opinions as experts."  Rather, Dr. Zeiguer explained at length the factual underpinings for his own diagnoses of paraphilia NOS (non-consent)

and personality disorder NOS with anti-social features, including a one-hour interview with [Talbert] a month before the hearing. With respect to the actuarial instruments, in particular the MnSOST interpreted by Dr. Gambone, to which we made reference in our prior opinion, . . ., Dr. Zeiguer performed his own scoring of the instrument. In the end, Dr. Zeiguer provided his own opinions, explaining their bases in detail, and without any inappropriate, much less excessive, reliance on hearsay. Thus, Dr. Zeiguer's reliance on the clinical certificate of Dr. Libertore, the use of which we previously criticize, . . . , was here very limited on remand, and only concerned [Talbert's] participation in certain recommended treatment programs and the impact on the scoring of the MnSOST.

The State also presented the testimony of Dr. Carlson, who had testified at the prior hearing that we reviewed in our first opinion. While there is still some evidence that Dr. Carlson relied on the opinions of non-testifying experts, he also averred that he was providing the court with his own opinions, primarily based on several psychological tests and actuarial instruments, such as the MnSOST referred to above, as well as his interview with [Talbert], albeit from two years earlier. Indeed, Dr. Carlson's opinion essentially mirrored his 2002 opinion; he found no bases in the record to change his previous opinion. However, he did concede that, having had no contact with [Talbert] since 2002, he could not opine on his risk "today."

The State's third witness, Dr. Barone, did not testify at the first hearing. She interviewed [Talbert] shortly before the present hearing and performed psychological testing. Dr. Barone used prior professional evaluations "primarily to collect background information. To get a sense of the way the resident presented in the past and I look mainly [for] inconsistencies among these impressions." She also reviewed police reports concerning the victim statements, both to formulate her opinion and to score the Static-99 actuarial instrument. Judge Perretti, however, carefully circumscribed her use of these hearsay documents, as we suggested . . . . A considerable portion of Dr. Barone's assessment was based on her interview with [Talbert].

22

In sum, we conclude that the State's witnesses did not rely on hearsay of the type and to the extent that caused our prior reversal and remand.

(RE A at pp. 11-14 (internal citations omitted)).  Similarly, the Appellate Division examined petitioner's claim that the state did not prove its case by clear and convincing evidence.  The Appellate Division held:

> [Talbert] challenges Judge Perretti's ultimate determination that the State established, by clear and convincing evidence, his eligibility for commitment under the SVPA.
>
> Our scope of review is limited to whether the record reveals a clear abuse of discretion.  Having carefully reviewed the record, we discern no abuse of discretion.  Judge Perretti, as fact-finder, was entitled to credit the State's experts and disregard the defense experts to the extent they disagreed.  We reject [Talbert's] argument for the reasons expressed by Judge Perretti in her detailed fifty-five page oral decision of February 28, 2005. [Talbert's] arguments are without sufficient merit to warrant an extended discussion in this opinion.

(RE A at p. 14).

The Sixth Amendment right of confrontation, and its attendant limitations on the use of hearsay evidence does not attach to civil proceedings such as the commitment proceeding at issue here.  See, e.g., Carty v. Nelson, 426 F.3d 1064, 1073 (9th Cir. 2005), cert. denied, 547 U.S. 1130 (2006); United States v. Baker, 836 F. Supp. 1237, 1246 (E.D.N.C. 1993).  Moreover, petitioner has cited no Supreme Court case, and this Court has located none, holding that the Due Process Clause prohibits the use of hearsay evidence in civil commitment proceedings.  While

the loss of liberty associated with civil commitment is indeed,
severe, the government's interest in confinement of sexually
violent predators is similarly significant.  The effect of the
admission of the hearsay evidence is tempered by the "clear and
convincing" burden of proof imposed on the government and the
requirement of annual reviews.  Moreover, petitioner does not
contend that he was prevented from presenting competent contrary
evidence as to his mental condition.  To the contrary, petitioner
presented his own competing expert witnesses, who likewise relied
on hearsay evidence.

This Court also takes note that the Supreme Court has
allowed the use of hearsay evidence in other situations involving
the loss of liberty.  For instance, in determining what process
is due a citizen-detainee challenging his classification as an
enemy combatant, and the resultant loss of liberty, a plurality
of the Supreme Court held that the exigencies of that situation
would permit hearsay evidence to be accepted as the most reliable
available evidence from the government, provided the detainee is
given an opportunity to present his own factual case to rebut
that evidence.  See Hamdi v. Rumsfeld, 542 U.S. 507, 533-39
(2004).  Therefore, this Court finds that the state court's
determination that petitioner was not deprived of his
constitutional rights by the use of hearsay testimony is not
contrary to or an unreasonable application of Supreme Court
precedent.

Further, even if the state admitted hearsay evidence over petitioner's objections, this Court finds that the petitioner's claim has no merit because a state's misapplication of its own law does not constitute a violation of due process except in "rare" cases only.  Generally, issues as to the admissibility of evidence, as asserted by petitioner here, are questions of state law and not subject for federal habeas review.  See Estelle v. McGuire, 502 U.S. 62, 68 (1991); Johnson v. Rosemeyer, 117 F.3d 104, 112-15 (3d Cir. 1997); see also Keller v. Larkins, 251 F.3d 408, 416 n.2 (3d Cir.), cert. denied, 534 U.S. 973 (2001). Federal courts must afford the states deference in its determinations regarding evidence and procedure.  See Crane v. Kentucky, 476 U.S. 683, 690 (1986).  It is well-established that "a state court's misapplication of its own law does not generally raise a constitutional claim.  The federal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997)(citations omitted), cert. denied, 522 U.S. 1109 (1998).

However, evidentiary rulings may violate due process when the petitioner "was denied fundamental fairness at trial." Hutchins v. Hundley, 1991 WL 167036 at *4 (D.N.J. Aug. 22, 1991)(Wolin, J.)(citations omitted); see also Kontakis v. Beyer, 19 F.3d 110, 120 (3d Cir.), cert. denied, 513 U.S. 881 (1994); Lisenba v. California, 314 U.S. 219, 228, 236 (1941)(holding that

state court's evidentiary rulings may form the basis for habeas relief when they "so infused the trial with unfairness as to deny due process of law").

The appropriate inquiry is "whether the claimed error of law is a fundamental defect which inherently results in a complete miscarriage of justice or in an omission inconsistent with the rudimentary demands of fair procedure." Hutchins, 1991 WL 167036 at *4 (citing United States v. De Luca, 889 F.2d 503, 506 (3d Cir. 1989), cert. denied, 496 U.S. 939 (1990))(other citations omitted). The Supreme Court has further stated that "an otherwise valid conviction should not be set aside if the reviewing court may confidently say on the whole record that the constitutional error was harmless beyond a reasonable doubt." Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986). An error is not harmless if "it aborts the basic trial process or denies it altogether." Hutchins, 1991 WL 167036 at *5 (citing Rose v. Clark, 478 U.S. 570, 578 n.6 (1986)).

Here, a review of the whole record demonstrates that the hearing process was fundamentally fair. Petitioner was represented by counsel, had the opportunity to cross-examine the expert witnesses, and also presented expert testimony on his own behalf, which likewise contained hearsay evidence.

Moreover, as mentioned above, even if Judge Perretti's rulings were in error, there was sufficient evidence for the judge to conclude by clear and convincing evidence that

petitioner was a sexually violent predator in need of further confinement. Specifically, Judge Perretti found, in an oral decision dated February 28, 2005, which this Court has reviewed, that petitioner: (1) had been convicted of sexually violent offenses as defined in the SVPA; (2) petitioner's pattern of conduct consistent with violent sexual offenses led to the diagnoses offered by the experts in their testimony and their conclusions regarding petitioner's risk and condition; (3) petitioner had made little or no progress in treatment as a resident at STU, and failed to participate in therapy groups; (4) petitioner's general attitude about therapy was that it was not for him since he wasn't "getting out;" (5) petitioner attributed his crimes to drug use, but refused substance abuse treatment; (6) petitioner displayed manipulative behavior and makes up stories; (7) the experts who testified were entitled to rely upon information in treatment records and their representations were true; (8) petitioner's expert witness's opinion was similar to the state's witnesses; (9) petitioner's attitude was indicative of recidivism; and Judge Perretti concluded:

> This Court is clearly convinced that [Talbert] is a sexually violent predator. He suffers from abnormal mental conditions and personality disorders that predispose him to commit sexually violent acts. As a result of these conditions, he has serious difficulty controlling his sexually violent behavior. He demonstrated this by his three violent sex crimes committed within a two month period while he was already on parole. As a result of his difficulties controlling his sexually violent behavior, I find it is highly likely that he will commit sexually violent offenses if not confined for care and treatment.

[Talbert's] persistent refusal to accept responsibility for his acts together with his persistent portrayal of himself as a victim of an unjust system establishes the characteristics, which according to the psychiatrist go with [Talbert's] personality disorder.  It is that personality disorder which enables him to act on his paraphelia and the combination predisposes him to sexually violent behavior.

(RE E at pp. 58-59).

Furthermore, as to petitioner's claim that there was not clear and convincing evidence to commit him, this Court, having carefully reviewed the state record of the proceedings, namely, the expert testimony and documentary evidence relied upon by Judge Perretti, finds no merit to petitioner's claims. Petitioner simply takes a different position, preferring his own experts' opinions, which Judge Perretti considered but rejected. Judge Perretti based her decision on all the other psychiatric evidence and testimony, criminal history, treatment records, and petitioner's own actions in her conclusion that petitioner was highly likely to re-offend.  This evidence was clear and convincing to the trial court.

Petitioner merely disagrees with the state court evidential rulings, which is a matter of state law not subject to federal habeas review unless he was denied fundamental fairness at the hearing.  There is nothing in the state record to show that petitioner was denied due process or fundamental fairness.

Thus, the petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the state court determinations have "resulted in a decision that was contrary to, or involved an unreasonable

application of clearly established Federal law, as determined by the Supreme Court of the United States." Nor has petitioner demonstrated that the state court rulings "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Accordingly, Grounds Three and Four, concerning hearsay and weight of evidence concerns, will be denied for lack of merit.

## CERTIFICATE OF APPEALABILITY

This Court next must determine whether a certificate of appealability should issue. See Third Circuit Local Appellate Rule 22.2. The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons discussed above, this Court's review of the claims advanced by petitioner demonstrates that he has failed to make a substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue. Thus, this Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

## CONCLUSION

For the above reasons, this Court finds that the § 2254 habeas petition should be denied on the merits and a certificate of appealability will not issue.   An appropriate order follows.

_____
PETER G. SHERIDAN
United States District Judge

DATED: 1/26/09